## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ERIKA CHRISTIANNA MAY and | § | |
| RICHARD LEE MAY, SR., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL CASE NO. 4:11-3516 |
| | § | |
| WELLS FARGO BANK, N.A. and | § | |
| FEDERAL HOME LOAN | § | |
| MORTGAGE CORPORATION | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

In this foreclosure suit, Defendants have filed a Second Motion for Summary Judgment and Motion to Dismiss Plaintiff's Third Amended Complaint with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. # 68] ("Motion").    Plaintiffs have responded [Doc. # 73] ("Response") and Defendants replied [Doc. # 74] ("Reply").[1] The Motion is fully briefed and ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **granted**.

---

[1]    In addition, Defendants have filed a Second Motion for Plaintiffs to Appear and Show Cause Why This Case Should Not Be Dismissed As a Result of Plaintiffs' Failure to Remit Payments as Ordered by This Court and Request for Oral Hearing [Doc. # 70]. Plaintiffs have not responded.  Given the rulings herein, this motion will be **denied as moot**.

## I.   <u>BACKGROUND</u>

As set forth in this Court's previous opinion, Plaintiffs Erika and Richard May purchased real property at 24615 Windfall Path in Spring, Texas (the "Property") on March 30, 2004.[2]  The purchase was financed under a mortgage in the amount of $190,350.00,[3] which subsequently was assigned to Defendant Wells Fargo Bank ("WFB").

In 2010, Mrs. May suffered a heart attack.  Beginning in September 2010, the Mays missed some of their mortgage payments.  Mrs. May continued to have health problems and Plaintiffs state that, by early 2011, they were $7,000 in arrears on their mortgage.

The Mays claim that they made contact with WFB several times to explain their situation and make arrangements for partial payments.  They allege that they applied for the Home Affordable Modification Program ("HAMP") and that they followed all instructions given by WFB representatives, including instructions to rush payments to WFB and to supply numerous documents.  They further allege that WFB representatives gave them inconsistent instructions, failed to return their phone calls, and demanded documents that they already had provided.

---

[2]      Deed of Trust, dated Mar. 30, 2004 (Exhibit B to Doc. # 68).

[3]      Note, dated Mar. 30, 2004 (Exhibit A to Doc. # 68).

At a foreclosure sale on August 2, 2011, the Federal Home Loan Mortgage Corporation purchased the Property.

Plaintiffs' Third Amended Complaint [Doc. # 14] ("Complaint"), filed on February 24, 2012, includes claims for breach of contract, violation of the Texas Finance Code, and declaratory judgment, among other claims. The Complaint also included a claim for violation of the Due Process Clause of the Fifth Amendment, which was dismissed on June 24, 2013. *See* Memorandum and Order [Doc. # 65]

## II.   **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[4]   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue

---

[4]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[5]   FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

of material fact."[6]  The moving party, however, need not negate the elements of the non-movant's case.[7]  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[8]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[9]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[11]  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory

---

[6]     *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[7]     *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[8]     *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

[9]     *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

[10]    *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[11]    *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

facts.'"[12]   The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[13]   Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[14]   Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."[15]   In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[16]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[17]   A party's self-serving and unsupported

---

[12]   *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[13]   *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled on other grounds*, *Grand Isle Shipyards, Inc., v. Seacor Marine*, *LLC*, 589 F.3d 778 (5th Cir.2009).

[14]   *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

[15]   *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

[16]   *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[17]   *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[18]

Finally, although the Court may consider all materials in the record when deciding a summary judgment motion, "the court need consider only the cited materials."[19]  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[20]

## III.   ANALYSIS

### A.   Breach of Contract

Plaintiffs sue WFB for breach of contract, alleging that WFB breached the Deed of Trust because WFB did not comply with the instrument's "default provisions" that grant rights and remedies to the borrower.  Although Plaintiffs' briefing does not cite to a particular provision in the Deed of Trust, Plaintiffs apparently intend to refer to

---

[18]    *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[19]    FED. R. CIV. P. 56(c)(3).

[20]    *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotation marks omitted).

Section 22, headed, "Acceleration; Remedies."[21]   Among other things, Section 22 requires the lender to give the borrower notice prior to acceleration, and additionally requires that the notice specify the default by borrower, the action required to cure the default, a date by which the default must be cured, and an explanation that the failure to cure will result in acceleration of the debt and sale of the property.

Under Texas law, a plaintiff bringing a breach of contract claim must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.[22]   If one party to a contract commits a material breach, "there is no obligation for the non-breaching party to continue performance."[23]

Plaintiffs have failed to demonstrate a genuine issue of material fact regarding the second element of their claim, which is performance or tendered performance by Plaintiffs.   The Deed of Trust, which is the contract upon which Plaintiffs sue,

---

[21]     Deed of Trust (Exhibit B to Motion), at 13, § 22.

[22]     *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.–Hou. [14th Dist.]. 2005, pet. denied)).

[23]     *U.S.* ex rel. *Wallace v. Flintco Inc.,* 143 F.3d 955, 968 (5th Cir. 1998) (citations omitted).  *See Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 470 (5th Cir. 2004); *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) ("A fundamental principle of contract law is that when one party to a contract commits a material  breach of that contract, the other party is discharged or excused from any obligation to perform.").

required Plaintiffs to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note."[24]  Plaintiffs concede that they did not make payments in compliance with the Deed of Trust.[25]  Therefore, Plaintiffs failed to perform under the contract.  Because Plaintiffs were in default of the contract's terms, they cannot maintain a suit for breach of the contract.[26]

Plaintiffs argue that, despite their default on the Deed of Trust's terms, they may properly pursue a breach of contract claim under the terms of the Deed of Trust because, once WFB offered consideration of a loan modification, "the Mays [did] their part to try and cure the default."  Response, at 11.  The summary judgment record does not support Plaintiffs' contention.  In fact, Plaintiff Erika May testified at her deposition that she and her husband sent loan modification documents to WFB on August 2, 2011, the date of the foreclosure sale, and that she did not recall sending any such documentation before August 2, 2011.[27]

---

[24]     Deed of Trust, at 4, ¶ 1.

[25]     *See* Complaint, at 5, ¶ 14 (in 2011, the Mays were $7,000 in arrears on their mortgage).

[26]     *See Eby*, 369 F.3d at 470;  *Wallace,* 143 F.3d at 968;  *Hernandez*, 875 S.W.2d at 692.

[27]     Oral Deposition of Erika May (Exhibit D to Motion), at 107-110.

Moreover, Plaintiffs do not cite to or produce evidence of any binding agreement between the parties regarding a loan modification.  HAMP does not create a private right of action, and individual borrowers lack standing to challenge compliance with HAMP agreements.[28]

Because there is no genuine issue of material fact for trial, Plaintiffs' breach of contract claim is dismissed.

### B.    <u>Declaratory Judgment</u>

Plaintiffs bring a claim for declaratory judgment pursuant to the Uniform Declaratory Judgments Act, Texas Civil Practice and Remedies Code § 37.001 *et seq*. Plaintiffs ask the Court to declare that Defendants' acceleration of the Note and referral to foreclosure was in contravention of the terms of the Deed of Trust.  *See* Complaint, at 23-24, ¶ 52 (arguing that the Deed of Trust required WFB to provide notice of default and actions available to cure default, and give thirty days to cure). These claims are essentially the same as Plaintiffs' breach of contract claim, which the

---

[28] *See, e.g., Hung Quang Tran v. BAC Home Loans Servicing, LP,* No. 4:10–CV–03514, 2011 WL 5057099, at *2-*3 (S.D. Tex. Oct. 24, 2011) (Ellison, J.) (collecting cases); *Cade v. BAC Home Loans Servicing, LP,* No. H–10–4224, 2011 WL 2470733, at *2 (S.D. Tex. June 20, 2011) (Miller, J.) (collecting cases); *Akintunju v. Chase Home Fin., LLC,* No. H–11–389, 2011 WL 2470709, at *4 (S.D. Tex. June 20, 2011) (Rosenthal, J.); *Simon v. Bank of Am., N.A.,* No. 10–CV–00300, 2010 WL 2609436, at *10 (D. Nev. June 23, 2010).

Court has dismissed above.  Declaratory relief is not justified because there is no "substantial and continuing controversy between two adverse parties."[29]

Moreover, the Declaratory Judgments Act does not provide the remedy Plaintiffs seek.  The Act permits a court to "declare rights, status, and other legal relations."[30] Although in some instances the court has the power to determine an issue of fact,[31] "[t]he determination of whether a party has breached a contract . . . is not a declaration of a right or status and therefore, is not the proper subject of a declaratory judgment."[32]

Summary judgment is granted for Defendant on Plaintiffs' declaratory judgment claim.

### C.    Texas Finance Code

Plaintiffs bring claims under Sections 392.301(a)(8), 392.304(a)(8), and 392.304(a)(19) of the Texas Finance Code, which permit consumers to bring suits against debt collectors in certain circumstances.

---

[29]    *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003).

[30]    TEX. CIV. PRAC. & REM. CODE § 37.003(a).  *See id.* § 37.004(a) (authorizing declaration of rights, status, and legal relations under written contract).

[31]    *Id.* § 37.007.

[32]    *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 140 (Tex. App.–El Paso, 1997).  *See Lauderdale v. Wells Fargo Bank, N.A.*, No. H-11-3449, 2012 WL 4629877, at *2 (S.D. Tex. Oct. 1, 2012) (Johnson, M.J.); *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 700 (Tex. App.–Hou. [1st Dist.], 2007)

Section 392.301(a)(8) prohibits a debt collector from "threatening to take an action prohibited by law."  Plaintiffs argue that WFB violated this provision when it threatened to foreclose on the Property without "properly considering" modification under HAMP or other loan modification programs.  Complaint, at 20, ¶ 40.  This allegation, even if proven, would not establish a violation of the statute.  WFB foreclosed on the Property, and was entitled to do so under the Deed of Trust based on Plaintiffs' monetary default.  The foreclosure was not "an action prohibited by law."  Rather, this procedure is expressly permitted by the statute, which states that its provisions do not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale."[33]

Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt."  In order to constitute a misrepresentation, Defendants must have made an affirmative statement that is  false or misleading.[34]  Plaintiffs identify no such affirmative statement.  Rather, Plaintiffs

---

[33]   TEX. FIN. CODE § 392.301(b)(3).  *See Watson v. Citimortgage, Inc.*, No. 10-CV-707, 2012 WL 381205, at *8 (E.D. Tex. Feb. 3, 2012) (Schell, J.); *Cole v. U.S. Bank Nat'l Ass'n ND*, No. H-11-2325, 2011 WL 3651029, *1 (S.D. Tex. Aug. 17, 2011) (Miller, J.).

[34]   *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010) (Lynn, J.)  (citing *Reynolds v. Sw. Bell Tel., L.P.,*  No. 2-05-356-CV, 2006 WL 1791606, at *7 (Tex.App.–Ft. Worth June 29, 2006, pet. denied).  *See  Bellaish v. Chase Home Fin., LLC*, No. H-10-2791, 2011 WL 4902958, at *2 (S.D. Tex. Oct. 14, 2011) (Atlas, J.).

merely allege that WFB violated this provision when, despite repeated demands by Plaintiffs, WFB refused to "account for the actual amounts due and the payments that were to be made by providing a payoff quote." Complaint, at 21, ¶ 42. Plaintiffs have failed to demonstrate a genuine issue of material fact as to a violation of Section 302.304(a)(8).

Section 392.304(a)(19) prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Plaintiffs allege that WFB violated this provision when it "deceptively" told Plaintiffs that it was "too late" for a "short sale" or other measures short of foreclosure. Complaint, at 21, ¶ 42. Because their Response cites to no evidence supporting such an argument, their claim fails.

Summary judgment is granted in Defendants' favor on Plaintiffs' claims under the Texas Finance Code.

### D.   Quiet Title

Plaintiffs' Third Amended Complaint seeks the equitable remedy of quiet title, alleging that WFB's foreclosure on the Property was improper and has interfered with Plaintiffs' enjoyment of the Property.

A suit to quiet title "relies on the invalidity of the defendant's claim to the property," and therefore "the plaintiff has the burden of supplying the proof necessary

to establish his **_superior equity and right to relief_**."  *Morlock, L.L.C. v. JP Morgan Chase Bank, N.A.*, ___ F. App'x ___, No. 12-29623, 2013 WL 2422778, *1 (5th Cir. June 4, 2013) (citing Texas law) (internal quotation marks and citations omitted) (emphasis original).  In order to recover, a plaintiff must establish his or her right of ownership.  *Id*.

Plaintiffs' summary judgment submission provides no facts or arguments in support of their quiet title claim.  Because WFB was the owner and holder of the Note, it was entitled to enforce the Deed of Trust through foreclosure after Plaintiffs materially breached that Deed of Trust.  Plaintiff's claim to quiet title is dismissed.

### E.    Waiver and Quasi-Estoppel

Plaintiffs' Third Amended Complaint pleads waiver and quasi-estoppel as equitable defenses to acceleration and sale.  As to waiver, Plaintiffs assert that WFB waived its right to sell the Property when it offered to consider Plaintiffs for loan modification.  Regarding estoppel, Plaintiffs allege that, because WFB chose to participate in HAMP but then purportedly failed to consider Plaintiffs' requests for loan modification under the program, it was "unconscionable" for WFB to foreclose on the property.  *See* Complaint, at 21-23, ¶¶ 43-48.

By Plaintiffs' own description, in raising these defenses, Plaintiffs "plead as though they were a defendant" to a breach of contract claim brought by WFB.

Complaint, at 21, ¶ 43.  In fact, WFB has not brought any breach of contract claim

against Plaintiffs.  These defenses thus are inapplicable to the case at bar.[35]

### F.      Defendants' Request for Attorneys' Fees and Costs

Defendants seek to recover their attorneys' fees and costs in the amount of

$54,110.76 under Section 9 of the Deed of Trust.   Section 9 provides:

> **Protection of Lender's Interest in the Property and Rights Under
> this Security Instrument**.   If (a) Borrower fails to perform the
> covenants and agreements contained in this Security Instrument, [or] (b)
> there is a legal proceeding that might significantly affect Lender's
> interest in the Property and/or rights under this Security Instrument . . .
> then Lender may do and pay for whatever is reasonable or appropriate
> to protect Lender's interest in the Property and rights under this Security
> Instrument. . . . Lender's actions can include, but are not limited to . . .
> paying reasonable attorneys' fees to protect its interest in the Property
> and/or rights under this Security Instrument. . . .
>
> Any amounts disbursed by Lender under this Section 9 shall become
> additional debt of Borrower secured by this Security Instrument.  These
> amounts shall bear interest at the Note rate from the date or disbursement
> and shall be payable, with such interest, upon notice from Lender to
> Borrower requesting payment. . . . [36]

Plaintiffs argue that Section 9 does not provide for attorneys' fees in this suit.

In particular, Plaintiffs argue that Section 9 "deals only with WFB protecting its

interest and lien position in the Property," but that in this case WFB already owns the

---

[35]   *See Brooks v. Ocwen Loan Servicing, LLC*, No. H-12-1410, 2012 WL 3069937, at * 7
(S.D. Tex. July 27, 2012) (Lake, J.) ("Because Brooks' waiver and quasi-estoppel
allegations are defenses to claims that Ocwen has not pleaded, they are not properly
before the court and will therefore be dismissed.").

[36]   Deed of Trust, at 7-8, § 9.

Property through foreclosure and has the option to evict Plaintiffs and seek attorneys' fees through the Justice Court.  Response, at 15.  This argument is defeated by the contractual language above, which allows WFB to collect attorneys' fees for "a legal proceeding that might significantly affect Lender's . . . rights under [the Deed of Trust]."[37]  Moreover, Plaintiffs' argument ignores the fact that, after the foreclosure on August 2, 2011, they filed this lawsuit and brought claims against Defendants under the terms of the Deed of Trust.[38]  Defendants are entitled to enforce the Deed of Trust's provisions regarding attorneys' fees and costs.[39]

Attorneys' fees requests in the Fifth Circuit are governed by the "lodestar" analysis.[40]  The lodestar is the product of the number of hours reasonably expended on the litigation by the movant's attorneys and each attorney's reasonable hourly

---

[37]   *See id.*

[38]   Plaintiffs filed this suit in state court on September 14, 2011, and Defendants removed to this Court on September 28, 2011.

[39]   *See In re Velasquez*, 660 F.3d 893, 899-900 (5th Cir. 2011).

[40]   *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996).  Texas law employs a virtually identical analysis to that used by the federal courts.  *See Land Rover U.K., Ltd. v. Hinojosa*, 210 S.W.3d 604, 607 (Tex. 2006).

billing rate.[41]  The movant bears the burden of documenting the hours expended and

rates charged. [42]

In determining a reasonable fee award, the district court is to consider the

twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[43]  The court

should exclude from the lodestar calculation all claimed time that is "excessive,

duplicative, or inadequately documented."[44]  While the court is to "give special heed

to the time and labor involved, the customary fee, the amount involved and the result

obtained, and the experience, reputation, and ability of counsel," the most critical

factor in this analysis is the "degree of success obtained."[45]

---

[41]    *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000); *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).

[42]    *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[43]    The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of the issues; (3) required skill; (4) whether other employment is precluded; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the attorneys' experience, reputation and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson v. Georgia Highway Express, Inc.*, , 488 F.2d 714, 717-19 (5th Cir.1974).  *See Mid-Continent*, 205 F.3d at 231; *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir.1998).

[44]    *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).

[45]    *Migis*, 135 F.3d at 1047 (internal citations and quotation marks omitted).  *See Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006)*; Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003).

Defendants' lead counsel has submitted an Affidavit stating his opinion that "reasonable attorneys' fees and expenses" in this case are $54,110.76, of which $52,412.00 is fees and $1,698.76 is costs.[46]  Defendants charge $400.00 per hour for lead counsel, $275.00 per hour for associates, and $110.00 per hour for other personnel.  The Affidavit attaches a detailed itemization of the amounts billed.

Plaintiffs do not challenge counsel's hourly rate or the amount of time expended.  The Court nevertheless engages in an independent review of the reasonableness and necessity of the requested fees and expenses.

The Court finds that the "lodestar" amount of $52,412.00 should be adjusted downward to $49,084.50.  Specifically, the Court subtracts $3,327.50 from the fees claimed to eliminate the amount claimed for Defendants' preparation of their first Motion for Summary Judgment, filed in October 2012.  The Court denied the motion without prejudice because it challenged only Plaintiffs' Second Amended Complaint, despite the fact that Plaintiffs' Third Amended Complaint was filed eight months earlier, in February 2012.  *See* Memorandum and Order [Doc. # 65], at 9-10.  Under the first *Johnson* factor—"time and labor required"—these fees are not reasonable. Otherwise, the fees requested appear warranted under this factor.

---

[46]     Affidavit for Attorneys' Fees and Cost, signed by George A. Kurisky, Jr. (Exhibit L to Motion), at 2.

The Court also has considered the rest of the *Johnson* factors, and finds that a reasonable award of attorneys' fees in this case is $49,084.50.   Defendants also are entitled to recover their expenses of $1,698.76.

## IV.   **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED**   that Defendants' Second Motion for Summary Judgment and Motion to Dismiss Plaintiff's Third Amended Complaint with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. # 68] is **GRANTED**.   All of Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED**   that Defendants' Second Motion for Plaintiffs to Appear and Show Cause Why This Case Should Not Be Dismissed As a Result of Plaintiffs' Failure to Remit Payments as Ordered by This Court and Request for Oral Hearing [Doc. # 70] is **DENIED AS MOOT**.   It is further

**ORDERED**   that Defendants are **AWARDED** attorneys' fees of $49,084.50 and costs of $1,698.76.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **30th** day of **August, 2013**.

Nancy F. Atlas
United States District Judge